# In re Kensington and Oxford Turnpike Company.

1. Road cases in the Court of Quarter Sessions are reviewable only by writ of certiorari, which brings up the record only and not the opinion of the court below or the testimony there adduced. The Supreme Court is therefore confined to an examination of and a passing upon the regularity of the proceedings as disclosed by the record, and cannot look into the evidence, though incorporated in the opinion of the court below.

2. Where the record shows that the Court of Quarter Sessions, in a road case, has, after the lapse of a term, opened its own judgment, set aside a writ of mandamus execution issued in pursuance thereof, and awarded a writ of restitution for the amount paid in accordance with said mandamus, in which case it is contended that the action of the court was prompted by fraud practiced upon it in obtaining the judgment, the Supreme Court will not affirm the proceedings unless the record distinctly discloses that the court acted on this ground.

3. Where, in proceedings under the Act of March 24th 1869, Pamph. L. 525, to relieve a turnpike road from toll and throw the same open to the public, a report of appraisers is filed assessing damages against the city, and judgment is entered accordingly, and after the lapse of a term the city presents a petition averring that the award is grossly excessive, that the stockholders of the turnpike company owning the road claimed a much less sum, that most of them had been settled with for their stock on the basis of the value of the road being such less sum, that some of them had been informed that the city was paying for the road at that rate, and that the fact that the

[In re Kensington, &c., Turnpike Co.]

stockholders were willing to and had settled at that price had been studiously concealed from the jury and the court; and afterwards exceptions are filed by the city to the award, not on the ground of fraud, but for other reasons, in pursuance of which proceedings the judgment is opened: *Held*, on certiorari to the Supreme Court, that the facts set forth in the petition did not constitute an allegation of fraud. *Held*, further, that it must be presumed that the judgment was opened on the ground of the exceptions filed, and not on the ground of fraud, and that the exceptions, being insufficient to warrant such opening, the record disclosed a manifest irregularity which demanded reversal.

4. In proceedings under the Act of May 3d 1869, Pamph. L. 1247, the courts of Quarter Sessions cannot set aside the reports of road juries for matters dehors the record.

5. Where proceedings are instituted under said act to relieve a turnpike road from toll and to throw it open to the public, and the report of the appraisers is confirmed by the court upon the filing by the counsel of the turnpike company to which the road belongs of a remittitur of part of the award, the city is not entitled, on certiorari, to object to the legality and validity of such confirmation on the ground that such remittitur was not authorized by the turnpike company, because (1) this raises a question of fact outside the record, upon which the Supreme Court has no right to pass, and (2) the question is one in which the city has no concern, the turnpike company being the only party capable of raising the objection.

6. Where in such proceedings the report of the appraisers was filed, and exceptions were filed thereto by the city against whom the award has been made, at the same term as that in which the report has been filed, and then by agreement of all parties the exceptions were dismissed and the report confirmed at the same term: *Held*, that these proceedings were binding upon the city, and that it was not entitled to file new exceptions at the ensuing term of the court, on the ground that all parties have by law until the expiration of the next term after that in which the report of the appraisers has been made to file their exceptions thereto.

7. The Court of Quarter Sessions has a right to issue a writ of mandamus execution against the city for the amount of an award made against it in a road case, which award has been confirmed by the court.

8. In re Sedgeley Avenue, 7 Norris 509, followed.

9. In proceedings instituted under the Act of March 24th 1869, Pamph. L. 525, to open a turnpike road to the public, the market value of the stock of the company owning such road, and the actual productiveness of such road to such company, are not to be taken into account in estimating the damages to which such company is entitled.

February 24th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Certiorari to the Court of Quarter Sessions of *Philadelphia county*: Of July Term 1878, No. 14.

This was a proceeding instituted under the Act of March 24th 1869, Pamph. L. 525, to relieve a turnpike road in the city of Philadelphia, belonging to the Kensington and Oxford Turnpike Company, from toll, and to throw it open to the public. On June 4th 1877, a petition of fifty-four citizens praying for such relief and opening was filed, and an examiner was thereupon appointed to take testimony. On November 30th 1877, the examiner filed

[In re Kensington, &c., Turnpike Co.]

his report, recommending that the prayer of the petitioners be granted. The report was approved December 6th 1877, and appraisers were at once appointed to value the road. On December 24th 1877, the appraisers filed their report, appraising the road at $88,541.41. On the same day, the city solicitor filed exceptions to the report, on the ground that it was excessive, and that it had not been calculated on a proper basis of valuation. On December 28th 1877, the exceptions were dismissed and report confirmed on condition of the filing of a remittitur for $18,541.41. The same day, the secretary of the turnpike company filed a certificate, under his hand and the seal of said corporation, that at a special meeting of a majority of the stockholders, convened on December 27th 1877, after due notice inserted for two weeks previous in a daily newspaper, the report of the appraisers had been approved, and that it had been resolved to give up the road for that price or sum. On the same day, Henry C. Terry, the attorney of the turnpike company, filed on behalf of its president and managers a remittitur of $18,541.41 of the award. On the same day, a mandamus-execution issued from the Quarter Sessions to the city, commanding it to pay to the company the residue of the award. This was endorsed by the city solicitor, "the amount thereof, $70,145.75, should be paid." The amount was accordingly paid to Henry C. Terry, attorney for the turnpike company, and his receipt taken therefor.

On February 2d 1878, a petition was filed by the city of Philadelphia, setting out the foregoing proceedings, and then averring that the meeting of the stockholders of the turnpike company, at which the report of the appraisers had been approved and the resolution passed to give up the road, had been held only three days after the filing of the appraisers' report; that the certificate of such action filed in the cause set forth that such meeting was held in pursuance of notices inserted daily for two weeks in a daily newspaper, which notice, petitioner averred, could not have been that contemplated by the Act of Assembly, by reason of the fact that sufficient time had not elapsed between the making of the award and the holding of said meeting. That the petitioner was further advised that said report could not properly be confirmed until after the next term after filing the same, and that the time during which exceptions might lawfully be filed to said report had not elapsed; that notwithstanding this fact, said report had, on December 28th 1877, only four days after the filing of the same, been confirmed on filing of a remittitur. That the remittitur filed on that day by Henry C. Terry, attorney for the turnpike company, was, the petitioner was informed and believed, without authority of law and void, until the reduced award should be ratified by a stockholders' meeting of the turnpike company; but that notwithstanding these facts, a writ of mandamus-execution had issued against the city for

[In re Kensington, &c., Turnpike Co.]

the amount of the reduced award, which amount had accordingly been paid.

The petition then proceeded as follows: "Your petitioner is informed and believes, and avers that said award, even as the same has been reduced, is grossly excessive; that the sum of twenty thousand dollars is all that is claimed even by the stockholders to be the full value of said road to them; that most of them have been settled with at a rate of thirteen dollars per share of their stock, amounting in the aggregate to about said sum of twenty thousand dollars; that they, or some of them, were informed that the city of Philadelphia was paying them at that rate for their stock, and that the fact that said stockholders were willing and had agreed to settle at that price was studiously concealed from the jury and from this court at the time of said hearing.

"Your petitioner prays: 1. That said decree of confirmation may be set aside and vacated. 2. That said writ of mandamus may be set aside, and that a writ of restitution may be awarded for the return to the treasury of the said city of the said sum of $70,000. 3. That the said Henry C. Terry, who is an attorney of this court, be directed to pay said sum into court, or to retain the same until the further order of the court."

Upon the filing of this petition, the court granted a rule to show cause why the first and second prayers of the petition should not be granted, returnable on the next Road List before the judges of Court of Common Pleas, No. 4.

On the same day, the city solicitor, on behalf of the city, filed the following exceptions to the report of the appraisers and the proceedings:—

1. Because the damages assessed by the appraisers are excessive. 2. Because the road has ceased to be at all profitable to the stockholders, and no damages whatever have been or will be suffered by them by the giving up of the road. 3. Because the great majority of the stockholders have agreed to give up their stock at a price or rate amounting in the aggregate of all the shares of the capital stock to the sum of twenty thousand dollars only. 4. Because the proceedings are informal and irregular.

On February 9th the court opened the decree of confirmation, set aside the writ of mandamus, and awarded a writ of restitution, which was issued February 12th, returnable the first Monday of March 1878. On February 25th 1878, the court granted a rule to show cause why a levy made on the turnpike road, and the franchises of the turnpike company under the writ of restitution should not be set aside, proceedings to stay in the meantime, returnable the first Monday of March 1878. On March 15th 1878, the answer of the turnpike company was filed. It protested, in the first place, that the petition of the city had been presented to the judges of Court of Common Pleas No. 4, none of whom

[In re Kensington, &c., Turnpike Co.]

had been at the time detailed to hold a Court of Quarter Sessions in accordance with article V., sect. 8, of the constitution (as appeared from a certificate of the clerk of the Court of Quarter Sessions thereto annexed), and none of whom therefore had any jurisdiction over the matters referred to in the petition. It further protested that the report of the appraisers had been ready for argument at December Term 1877, by reason of the exceptions filed thereto, that it had been duly disposed of, and that any motion with reference thereto in January Term 1878 was beyond the jurisdiction of the judges of the Court of Common Pleas No. 4, or any one of them. The answer then averred as follows :—

"These respondents are advised that it is immaterial whether the stockholders, at their meeting of December 27th 1877, were duly convened in accordance with the statutes under which the award was made, inasmuch as your respondents, nor any stockholder thereof, or therein, has made any complaint against the award, and an objection cannot be made by the city, and they also insist that the approval of the report duly certified to the court under the seal of these respondents was all that was required to enable the court to act as it did ; but these respondents do also allege and insist that if any inquiry can be made into the regularity of said meeting, it will appear that the same was convened in pursuance of law, and that its action was regular, and that a majority in number and a large majority in value approved thereof, and these respondents further say that since the confirmation of said report, a large majority of the stockholders in number and value have surrendered their capital stock to the respondents and received their distributive share of the award.

"And these respondents further answering say, that they are advised and aver that it was competent for the court to approve said report, after exceptions had been filed thereto by the solicitor of the city of Philadelphia, whenever and wherever it was convenient to hear, consider and determine upon the same ; and the action of the court in considering said exceptions having been with full notice to, in the presence, and with the consent of the duly authorized solicitor of the city of Philadelphia, to whom the whole subject-matter is intrusted by the Act of May 13th 1856, cannot, for the reason suggested in said petition, be subsequently avoided or inquired into, especially after the term at which such hearing was had, and said award made has expired.

"And these respondents further answering say, that the remittitur filed by their counsel and referred to in said petition, was filed by him under authority obtained from these respondents under their corporate seal, and has never been objected to or complained of by them or any stockholder in their corporation.

"And these respondents further answering say, that since the said remittitur was filed and said reduced award confirmed, they

[In re Kensington, &c., Turnpike Co.]

have relinquished their franchises to the city, and their said turnpike road has been, since December 31st 1877, in the free use of the citizens of the Commonwealth, freed from toll, and said city cannot for that reason make the complaint and ask the relief in said petition set forth.

" And respondents further state that they are informed and do admit it to be true, that the amount of said award, with the lawful costs thereon, was collected by an order issued by the clerk of the Court of Quarter Sessions upon the treasurer of said city acting with the function of county treasurer, and that this is the usual manner in which road damages now are by law made payable in this county.

" And these respondents further insist, that it is, for the reasons aforesaid, too late to inquire whether said award, paid as aforesaid, is an excessive award, or whether the sum awarded is in excess of the value of the road so appraised; that the appraisers having made report thereon according to law, and there being no averment in said petition that their appraisement or its confirmation was procured by any fraud or artifice practiced upon said appraisers, and the city of Philadelphia having been by counsel fully heard thereon in said court, that the same is now conclusive upon the said city, and that it is wholly immaterial what agreements were made for the sale of any shares of the stock owned by the stockholders, or whether the appraisers (or jury) were or were not aware of the existence of any such agreements, as the same were not relevant in appraising the value of said road.

" And these respondents further answering say, that the city of Philadelphia was duly represented before the appraisers, and all the facts bearing on the value of their road were open and accessible to the representatives of said city, and that such facts as her said solicitor deemed pertinent were by him duly offered and proved in evidence; that the books and records of these respondents were produced on call and thrown open to the inspection of the said appraisers and said solicitor of the city, and so far as these respondents know or believe, no statement was made before said appraisers by any witness that was not entirely truthful and correct, and they aver that the award of said appraisers was based entirely upon the evidence duly submitted to them and upon that alone; they therefore submit that the city of Philadelphia having been duly heard before a tribunal constituted according to law, and the award made by said tribunal having been confirmed by the court after due hearing, that it is not now competent for said city to make objection thereto upon any allegation in the petition of her solicitor set forth."

Testimony was then taken by the court as to the truth of the facts alleged in the petition and answer.

The court, in an opinion by Elcock, J. (Briggs, J., filing a concurring opinion), stated that from the testimony taken, they

were convinced of the following facts: "That the turnpike company did not desire more than the sum of $20,000 as a price for their road. That they had offered to sell it for that sum. That they had made a bargain with their attorney or solicitor, H. C. Terry, Esq., to obtain them that sum only. That the officers of said company and said Terry had suppressed this fact in the evidence submitted to the appraisers, and also when asking for the decree of court. That said Terry had unlawfully issued a mandamus execution upon said award. That the same was unlawfully endorsed by the city solicitor, and paid in consequence, innocently by the city treasurer. That said Terry had, out of said sum of $70,000, paid but $20,000 to the said turnpike company, and retained $50,000 for alleged professional services, $6250 of which he presented as a gift to a person who introduced the officers of said turnpike company to him as clients in this case. That the meeting of approval of the award of the appraisers, certified under the seal of the company to the court, was irregularly held, there being no regular notice published for the same, and those present and voting not being stockholders or their representatives by proper authorities. The said Henry C. Terry, an attorney of this court, having full knowledge of these facts, and concealing the same from all connected with administration of justice in the cause. That an award of such magnitude could be obtained in the face of these facts shows the utmost indifference of the officers of the company to means by which they were to obtain $20,000, if not actual conspiracy for the purpose."

The court, therefore, upon these grounds, sustained the exceptions to the award of the appraisers filed by the city, set aside the said report, and referred it back to the same appraisers to reappraise the whole road, as set forth in the original petition. Further facts in the case will be found stated in the opinion of this court.

The turnpike company took this writ of certiorari, filing the following assignments of error:

1. The judges to whom the petition of February 2d 1878, was presented, and who granted the rule to show cause thereon why the decree of confirmation should not be set aside and vacated, were not judges of the Court of Quarter Sessions for the term of January 1878.

2. The Court of Quarter Sessions in the term of January 1878, did not grant the rule to show cause why the decree of confirmation should not be set aside and vacated.

3. The order of February 9th 1878, that the writ of mandamus be set aside, and that a writ of restitution be awarded, was contrary to law.

4. The petition of February 2d 1878, shows no cause sufficient in law to avoid a decree or judgment adversely made after argument and hearing.

[In re Kensington, &c., Turnpike Co.]

5. The court below erred in setting aside the report of the appraisers on the 6th day of April 1878.

6. There was no jurisdiction in the Court of Quarter Sessions, after the lapse of the term, to set aside and vacate the decree, on the ground of other evidence existing, whether known or unknown to the city of Philadelphia.

7. That the order of April 6th 1878, is contrary to law.

*F. Carroll Brewster*, and *David W. Sellers* (with whom were *Henry C. Terry* and *Lewis C. Cassidy*), for the Kensington and Oxford Turnpike Company.—Under the old Act of March 13th 1867, Pamph. L. 420, the judges of the Quarter Sessions had to be assigned to that duty before or at, never after, the beginning of the term. It is believed that the provisions of art. V., sect. 8 of the Constitution of 1874 did not alter the law in this particular. The filing of the petition in this case in Court of Common Pleas No. 4 was therefore wholly irregular: Livingston's Appeal, 6 W. N. C. 310; Kilpatrick *v.* Commonwealth, 7 Casey 210. The mandamus issued to the city treasurer was a lawful process, and within the scope of the power of the Court of Quarter Sessions: In re Sedgeley Avenue, 7 Norris 509. The question of excessive award had already been passed upon by the court on the first exceptions filed by the city, and could not again be taken up. Every question as to the proper method of computing the award, and the legal basis thereof, was then fairly raised and settled. Nor was there ground for the action of the court on the footing of fraud. The alleged agreement between Terry and the turnpike company was at most an arrangement for a contingent fee, which is not necessarily contrary to law. Even if unlawful, the question is one purely between Terry and his client. The city, a third party, cannot complain of any wrong done to it. Nor was Terry obliged to divulge to the appraisers or to the court the value which his clients placed upon their property. Such conduct would have been a breach of professional fidelity and duty: Carpmeil *v.* Powis, 1 Phil. Ch. 687. A judgment having been once entered by the Court of Quarter Sessions, it is powerless at a subsequent term to reconsider such judgment: Commonwealth *v.* Mayloy, 7 P. F. Smith 291; King *v.* Brooks, 22 Id. 363.

*C. E. Morgan, Jr.*, Assistant City Solicitor, and *William Nelson West*, City Solicitor, for the city of Philadelphia.—The record simply shows that the Court of Quarter Sessions granted the rule to show cause, and assigned further proceedings to the judges of Court of Common Pleas No. 4. The court was duly organized to take this action. How then can any question of jurisdiction arise? But further, this assignment was made in pursuance of a rule of court requiring road cases ready for argument in

certain months to be assigned to certain courts. This is a delega-
tion and assignment of the judges of those courts as judges of
Quarter Sessions before the term on which they are to act, such as
our opponents deem necessary. In a case like the present, it is
particularly appropriate that this should be done. One of the
judges of Court of Common Pleas No. 4 was sitting in Quarter
Sessions in December term 1877, and was the most proper person
to hear an application for the opening of a judgment obtained
through fraud on the Court of Quarter Sessions while he was pre-
siding therein. This question was argued below, and it is well
settled that the court below is the proper judge of the extent and
application of its own rules: Snyder *v.* Bauchman, 8 S. & R. 336;
Umberger *v.* Zearing, Id. 163; In re road from Johnstown, 1
P. & W. 243; Rundel *v.* Keeler, 7 Watts 237; Wickersham *v.*
Russel, 1 P. F. Smith 71; Frank *v.* Colhoun, 9 Id. 381; Cole-
man *v.* Nantz, 13 Id. 178; Gannon *v.* Fritz, 29 Id. 303; Carey
*v.* Commonwealth, 4 Brewst. 62; Andrews *v.* Bank, 23 Pitts.
L. J. 133. If the act of the Court of Quarter Sessions in opening
its decree of December 28th 1877, was within the scope of its
power, it is not the subject of review or reversal by this court:
Bower *v.* Blessing, 8 S. & R. 243; Hill *v.* Irwin, 8 Casey 314;
Putney *v.* Collins, 3 Grant'72; Breden *v.* Gilliland, 17 P. F.
Smith 34; Sheppard's Case, 27 Id. 295. The report of the
appraisers was prematurely confirmed, and such confirmation was
further irregular in that it was based on the filing of a remittitur
by the counsel for the turnpike company, which he had no right
to do without the sanction of a stockholder's meeting. The excep-
tions filed to the report on February 2d 1878, were, therefore, in
time and the proceedings regular. Even if the decree was regu-
larly entered, the right to open it was not taken away by the lapse
of a term. Fraud was perpetrated upon the court, and therefore it
was proper to open its judgment at any subsequent time: Wanzer
*v.* DeBaun, 1 E. D. Smith 261; Allen *v.* Maclellan, 2 Jones 328;
Cannan *v.* Reynolds, 5 Ell. & Bl. 302; Booth *v.* Van Allen, 7
Phila. R. 401; Cochran *v.* Eldridge, 13 Wright 365; Stewart *v.*
Agnew, 1 Shaw's Appeal Cases 413; Robson *v.* Eaton, 1 Term
Rep. 62; Bandon *v.* Becher, 3 Cl. & Fin. 479; Smith *v.* Smith,
3 Phila. R. 490; Dorney *v.* Mertz, 8 Id. 553. Terry's action
here was clearly a fraud on the court. He suppressed his knowl-
edge as to the value put by his clients on their property in order
to obtain a large award for his own benefit. It was upon this
ground that the court below based their opinion and decree, and
the regularity of their proceedings cannot therefore be impeached.

Mr. Justice PAXSON delivered the opinion of the court, May
2d 1881.

This was a certiorari to the Court of Quarter Sessions of Phila-

[In re Kensington, &c., Turnpike Co.]

delphia county to review the record in a certain proceeding to assess the damages for the taking of the Kensington and Oxford Turnpike Road by the city of Philadelphia.

It is quite time it was understood that this court has no power to review such cases upon the merits. The law gives neither a writ of error nor an appeal to the Quarter Sessions in road cases. The decision of that court is final and conclusive upon all questions touching the merits. We can only review its action upon a writ of certiorari, which brings up nothing but the record, and our authority is limited to an examination of the regularity of the proceedings. This is settled law. See Shenango Township v. Wayne Township, 10 Casey 184; In re Church Street, 4 P. F. Smith 353; Duff's Private Road, 16 Id. 459; Philadelphia & Trenton Railroad Co., 6 Whart. 25; Road in Chartiers Township, 10 Casey 413; Road in Moore Township, 5 Harris 116; Kirk's Appeal, 4 Casey 185. A certiorari brings up nothing but the record, and the Supreme Court is confined strictly to questions affecting its regularity: In re Thirty-fourth Street, 31 P. F. Smith 27; Esling's Appeal, 8 Norris 205; and this court cannot look into the evidence, though incorporated in the opinion of the court below: Mauch Chunk v. Nescopeck, 9 Harris 46; Bradford v. Goshen, 7 P. F. Smith 495; Derry v. Brown, 1 Harris 389; Westmoreland County v. Conemaugh Township, 10 Casey 231; Plunkett's Creek Township v. Fairfield Township, 8 P. F. Smith 209.

In such cases, if the court below had jurisdiction and has proceeded in conformity with law, we have no power to reverse. It ought not to be necessary to repeat this so frequently, but the voluminous paper-books in this case, prepared as though upon an appeal or writ of error, including nearly four hundred pages of printed testimony, admonish us that our repeated attempts to mark the distinction between a writ of certiorari and a writ of error and appeal, have made but a slight impression on the professional mind.

The proceeding below was instituted under the Act of Assembly of 24th March 1869, Pamph. L. 525, the object of which was to provide a method whereby a turnpike road in the city of Philadelphia may be relieved from toll and thrown open to the public. We need not give in detail the provisions of the act. It is sufficient to say briefly that it provides for the appointment of six viewers by the Court of Quarter Sessions, three of whom are to be nominated to the court by the officers of such company, who shall proceed to view and appraise such road. The petition may be by either the managers of such road or by ten citizens. Before, however, the court shall appoint viewers, it shall refer the petition to an examiner, who is required to take testimony and report to the court upon the propriety of opening the road to public travel. The

viewers or appraisers are required to make their report to the Court of Quarter Sessions, and if the same be approved by said court, the appraised value of said road shall be paid by the city treasurer in the same manner as road damages in other cases.

With this brief explanation of the nature of the proceeding, I now turn to the record to see what has been done in the court below. I there find that on June 4th 1877, the petition of fifty-four citizens was presented under the Act of March 24th 1869, above referred to, setting forth, inter alia, that the Kensington and Oxford Turnpike Company had constructed a turnpike road, which "is an obstruction to the improvements of the city," and that "the public convenience now requires that said turnpike road shall be made free from toll," and praying the court to appoint an examiner · according to the provisions of said act, to take testimony, and report the facts in relation to said road for further order of the court on the same. On the same day the court below made the appointment of an examiner, as prayed for. On November 30th 1877, an examiner filed his report with the testimony, setting forth, inter alia, "that he believes it to· be to the best interests of the citizens living in the neighborhood, and owning property in the vicinity of said road, and also to the city itself, in short that the public convenience requires that the prayers of the petitioners be granted, and that the said road should be made free from tolls." This report was approved on December 6th 1877, and the court on the same day appointed the appraisers. as required by the Act of Assembly.

On December 24th 1877, the report of the appraisers was filed, in which they say that "after a careful consideration, they appraise the value of the said Kensington and Oxford Turnpike Road at $88,541.41." On the same day the city solicitor filed exceptions to the report of the appraisers, which exceptions are substantially as follows: 1. That the award is excessive. 2. That the appraisers erred in basing their award upon the value of the road-bed of the turnpike company. 3. That the award should have been based upon a capitalization of the average net income, to wit, $61,500. The court below sustained these exceptions to the extent of $18,541.41, as appears by the following order: "And now, December 28th 1877, exceptions are dismissed and report confirmed, on filing remittitur for $18,541.41." On the same day the approval of report of appraisers by special meeting of stockholders called for that purpose was filed; also remittitur of the President and Managers of the Kensington and Oxford Turnpike Company of $18,541.41, of the award to them. On the same day an order, commonly called. a mandamus execution, was issued by the court below to the city treasurer, commanding him to pay the amount of said award "out of any moneys unappropriated of the city of Philadelphia." This order was endorsed by

[In re Kensington, &c., Turnpike Co.]

the city solicitor, as follows: "This writ is issued upon an award of appraisers, confirmed by the Court of Quarter Sessions, for the taking of the Kensington and Oxford Turnpike, and the amount thereof, $70,145.75, should be paid." Upon December 31st 1877, the city treasurer paid the above order, taking therefor the receipt of Henry C. Terry, the attorney of the turnpike company.

Up to this point there is no difficulty. The court had jurisdiction; it was acting within the scope of its powers, and the record discloses no irregularity. I will now proceed to consider its subsequent action.

On the 2d of February 1878, the petition of the city of Philadelphia was presented, praying for the reasons therein set forth: 1st. That said decree of confirmation may be set aside and vacated. 2d. That said writ of mandamus may be set aside, and that a writ of restitution may be awarded for the return to the treasury of the city of the said sum of $70,000. 3d. That the said Henry C. Terry, who is an attorney of this court, be directed to pay said sum into court, or to retain the same until the further order of the court. Upon the filing of this petition, the court granted a rule to show cause why the first and second prayers of the petition should not be granted, returnable on the next road list before the judges of the Court of Common Pleas No. 4, and on the same day the city solicitor filed the following exceptions to the proceedings and to the report of the appraisers: 1. Because the damages assessed by the appraisers are excessive. 2d. Because the road has ceased to be at all profitable to the stockholders, and no damages whatever have been or will be suffered by them by the giving up of the road. 3d. Because the great majority of the stockholders have agreed to give up their stock at a price or rate amounting in the aggregate of all the shares of the capital stock to the sum of $20,000 only. 4th. Because the proceedings are informal and irregular. On February 9th 1878, the court ordered that the decree of confirmation be opened, that the writ of mandamus be set aside without prejudice to the city treasurer, and that a writ of restitution be awarded. On the 12th of the same month a writ of restitution was issued, returnable to the first Monday of March 1878. On the 25th of March the court granted a rule to show cause why the levy upon the turnpike road and franchises of the Kensington and Oxford Turnpike Company, under the writ of restitution in this case, should not be set aside, proceedings to stay in the mean time, returnable on Monday the 4th day of March next. On the 15th day of March 1878, the answer of the turnpike company was filed, and upon April 6th, the exceptions filed by the city were sustained; the report of the appraisers was set aside, and the matter referred back to the same appraisers to re-appraise the whole road, as set forth in the petition filed November 30th 1877. It was to these subsequent proceedings that the writ of

[In re Kensington, &c., Turnpike Co.]

certiorari was specially allowed, and their regularity is the question this court is now required to pass upon.

This is certainly a remarkable record. It ignores everything like finality in judicial proceedings. We have here a confirmation of the appraisers' report on Dec. 28th 1877, after the city had been heard on its exceptions, and the payment on Dec. 31st, by the city treasurer, of the amount of the award. In the following February, the court below, upon exceptions which did not differ substantially from those formerly filed by the city solicitor, opened its judgment, and within one week thereafter set aside the writ of mandamus and awarded a writ of restitution. If it may thus vacate its executed decrees after the term has passed, it may do so after twenty terms have passed. That it has no such power was settled in the case of Commonwealth *v.* Mayloy, 7 P. F. Smith 291, where it was ruled that the Court of Quarter Sessions could not at a subsequent term reconsider their judgment. Nor does the case of Sheppard's Contested Election, 27 P. F. Smith 295, conflict with this ruling in the slightest decree. That was a case in which the court below made a clerical error in its decree. A rule was entered during the term to correct the error, which rule the court proceeded to hear and dispose of at a subsequent term. This court affirmed the proceedings, but there is not a line in the opinion of the court to shake the doctrine of the finality of judgments so vigorously asserted in Commonwealth *v.* Mayloy.

It was urged, however, during the argument at bar, that the decree of confirmation was procured by a fraud, and that the proceedings below were set aside for this reason. It is undoubtedly true that fraud vitiates everything it touches, and that a decree of the court procured by such means may be set aside by the court which pronounced it. And if this record shows that the court below proceeded upon this ground, its judgment must be affirmed for the reason that the evidence upon which the court acted does not come up with the record, and we could not review such a question of fact.

If the fact be as asserted that a great fraud was perpetrated in this case, it is unfortunate for the city that such fraud was not distinctly and clearly averred upon the record. I do not wish to be misunderstood upon this point, when I say that there is not within the four corners of this record any positive averment of fraud. The nearest approach to it is the closing paragraph of the petition filed by the city solicitor, Feb. 2d 1878, for the purpose of having the confirmation of the award set aside. I quote the paragraph in full:—

"Your petitioner is informed and believes and avers, that said award, even as the same has been reduced, is grossly excessive; that the sum of $20,000 is all that is claimed even by the stockholders, to be the full value of said road to them; that most of

them have been settled with at a rate of $13 per share of their stock, amounting in the aggregate to about said sum of $20,000; that they, or some of them, were informed that the city of Philadelphia was paying them at that rate for the stock, and that the fact that said stockholders were willing and had agreed to settle at that price was studiously concealed from the jury and from this court at the time of said hearing."

This does not amount to a charge of fraud. At most it is an allegation that the road was not worth what it was appraised at; that the stockholders were willing to take a much less sum, and concealed that fact from the court and jury. There is not even an averment that such fact was fraudulently concealed. It would be going too far to say that such concealment was a fraud either in fact or in law. The company were under no duty to disclose this fact to the city. They were not forcing their road upon the city as an involuntary purchaser. They occupied no relation of trust and confidence which rendered such disclosure necessary as a matter of good faith. On the contrary, for all that appears in this record, the city was taking the road, upon the petition of over fifty of her citizens, against the will of the company. They were dealing at arms' length. It was the business of the city to get the road as cheaply as possible. It was the business of the company to get as much as a jury would give them. Each had an equal opportunity before the jury to show its real value, and each called a large number of witnesses upon this point. It is not alleged that the award was procured by false testimony or by any art or fraud practiced upon the jury. The proposition that a party whose property is about to be taken by a corporation is obliged to disclose to such corporation the minimum price he is willing to sell it for, is certainly novel. It would hardly be treated with respect were the complainant a railroad corporation. And yet the rule, if adopted, must be applied to all other cases. There is no distinction in this respect between municipal and other corporations. We cannot lay down a rule in the one case and refuse to enforce it in others. Had this road been taken for public use by a railroad corporation, it is not likely that the award would have been less. In such case no one would have ventured even to suggest that it was a fraud on the part of the company to withhold its minimum price. The appropriation of the price after it has been paid by the city, is a matter with which the latter has nothing to do. That is a question which concerns only the stockholders of the turnpike company. If they have been wronged by any one, they have their remedy. At present they do not complain, and the city has no right to complain for them.

Not only is there no allegation of fraud upon this record, but we have a distinct statement which shows the precise grounds upon which the court below must be presumed to have acted. I have

1 OUTERBRIDGE—18

[In re Kensington, &c., Turnpike Co.]

already given at length the exceptions filed by the city solicitor February 2d 1878.  Those exceptions make no allegation of fraud. It is not even hinted at.  All that we can properly know of the action of the court below—all that the record shows—is that these exceptions were sustained.  The entry of the judgment so reads. We must presume, it is our duty to do so, that the case was decided below upon these exceptions, and upon nothing else.  The Act of 3d May 1869, Pamph. L. 1247, provides that no report of viewers in the county of Philadelphia shall be set aside by the court, except in pursuance of an exception filed to said report.  The manifest object of this act was to prohibit the Quarter Sessions from setting aside reports of road juries for matter dehors the record.  This court has decided in a number of cases, one of them at the last term, that under this act it was error for the Quarter Sessions to set aside a report for a cause not specified in an exception.  See Norris's Appeal, 11 P. F. Smith 422; Report in Delaware Avenue, 17 Id. 309.  If, therefore, this report was set aside upon the ground of fraud, it was for a matter which had not been made the subject of any exception, and which was dehors the record.  Such action would have been in direct conflict with the Act of 1869, and, therefore, clearly erroneous.

It was urged, however, that the court below were justified in opening the confirmation upon the fourth exception filed by the city, viz., "that the proceedings are informal and irregular."  No informality or irregularity is pointed out by the exception, and we look in vain through the elaborate printed argument on behalf of the city for any such allegation.  On the contrary, the right of the court to open and set aside the confirmation is placed distinctly upon two grounds, viz., 1st. Fraud; and 2d. That the order of December 28th 1877 was not a final disposition of the case, because the court had no power to confirm the award finally until the same had been accepted by the stockholders, and the acceptance certified to the court under the seal of the company.  The first reason, as we have endeavored to show, has no support in the record.  What support it may have outside of the record is a matter as to which we have no right to inquire.  Nor has the second reason any better foundation.  The record shows that the award of the appraisers was approved by a meeting of the stockholders called for that purpose, at which a majority were present or properly represented, which approval was duly certified to the court under the seal of the company; also that a remittitur of the $18,541.41 was filed, signed by Henry C. Terry, Esq., the recognised solicitor of the company.  It is not a sufficient answer to this to say that the stockholders' meeting was the result of collusion, and that Mr. Terry had no authority to sign the remittitur.  This at once raises a question of fact outside of the record, which we have no right to pass upon.  Besides, these are questions with which the city has

no concern. The turnpike company might complain of this, but does not.

Another matter which does not appear by exception, and is not to be found in the printed argument, was referred to at the oral argument and will be mentioned here. It was said a portion of the road was not appraised; that it had been sold to the Philadelphia and Newtown Railroad Company, and was omitted by the appraisers for that reason.

How the appraisers in a proceeding to take the road of the Kensington and Oxford Turnpike Company could appraise a piece of road belonging to the Philadelphia and Newtown Railroad Company, has not been made to appear. As it has nothing to do with the case, I will not consider it further.

It is evident that these matters were thrown into the case as makeweights. This sufficiently appears from the concluding paragraph of the printed argument of the city solicitor, in which he says: " But we rest the case upon the ground upon which the court below placed it, viz., fraud practised upon the jury in obtaining the award, and upon the court upon the rendition of its decree of confirmation."

It was further suggested at the oral argument, that the confirmation of the report of the appraisers was premature; that the exceptions filed by the city, February 2d 1878, were within time, and, therefore, the court below had the power to open such confirmation. This point was not referred to in the paper-books, nor do we find any trace of it upon the record; as it has been suggested, however, it will be considered.

This proceeding was instituted under a special Act of Assembly, the third section of which provides, " The appraisers so appointed shall make report in writing to the said Court of Quarter Sessions; and, if their report be approved by the court, the appraised value of said road shall be paid by the city treasurer in the same manner as road damages now are by law made payable. Provided, always, That the approval of such report by a majority in value of the stockholders of said company, voting in person or by proxy, at a special meeting called for the purpose, be first had and obtained, and duly certified to the said court under the seal of the company." The fifth section of said act declares that the provisions of the general road laws relative to the assessment of damages for the opening of streets and roads " shall apply to all cases arising under this act, except when inconsistent with the provisions hereof."

No time is designated by the third section for the confirmation or approval of the report of the appraisers. As soon as the stockholders have approved the report in the manner designated in the act, and have certified their approval to the court under the seal of the company, the report is ripe for confirmation, provided the city, the only other party in interest, is satisfied. I concede if

[In re Kensington, &c., Turnpike Co.]

there were other parties, they would be entitled to come in and file exceptions at any time during the next term, as provided in the general road law. That length of time is given solely to enable interested parties to file exceptions. It is entirely competent for the court to confirm the report of appraisers, under the Act of 1869, at any time, with the consent of all parties in interest. This was what was done in the court below. There were but two parties, the city and the turnpike company. The report was filed and confirmed with the assent of each, and this appears of record. Under such circumstances it is immaterial when it was filed or when confirmed. Nor can any just criticism be made in regard to either act having been done out of time, or with undue haste. Both were in conformity with previous practice in the same court. A precisely similar course had been adopted in the Ridge Road case, a proceeding under the same Act of Assembly. In that case the report was filed and confirmed on the same day by the agreement of the parties. No one ever thought of questioning its regularity. Nor could there be a well-founded objection to such a proceeding, unless parties *sui juris* are incompetent to agree that a report in which no one but themselves is interested may be confirmed.

The law has wisely provided that in road cases the parties shall have until the next term of the court to file exceptions. The parties are usually numerous, and such an extension of time is necessary to allow them all to come in. But in such case, if all parties see fit to come in at an earlier day, file their exceptions, and, after a hearing, agree to a confirmation of the report, it would be a waiver of any irregularity. This is what was done here. The city voluntarily filed her exceptions. They were heard and sustained. The award was reduced by the amount of $18,541.41, and this sum was remitted. The city then assented to the confirmation. This assent appears upon the face of the record. It is to be found in the endorsement on the back of the mandamus execution by the city solicitor then in office, by whose efforts the award had thus been reduced. The right to issue this writ was put at rest by the decision in Sedgeley Avenue, 7 Norris 509, and it is idle to question its regularity in this case, in view of the fact that it issued with the approval and consent of the law officer of the city.

It may be conceded the assent of the city to the confirmation would have been of no avail as to other parties, had there been such interested in the report. They would have been entitled, as before stated, to file exceptions at any time during the next term. It was binding, however, upon the city. Having had her day in court, she could not, after a decision in her favor, after the payment of the money and the expiration of the term, come in and have the confirmation opened, merely that she might be heard

[In re Kensington, &c., Turnpike Co.]

again upon the question of damages or any technical matter that might and ought to have been raised at the former hearing. Had there been an allegation and due proof of fraud, it would have been otherwise. But up to the present time the city of Philadelphia has not placed upon this record an allegation that she has been defrauded by any one.

The value of this road was a question of fact for the jury. If they have made a mistake, it is beyond our power to correct it. It may not be improper to say a few words in this connection upon one or two points as they appear of record. It was assumed, on behalf of the city, that the road was worthless because it had ceased to pay dividends. This appears by the second exception, filed February 2d 1878. Yet by its exceptions filed the previous December, the city admitted the road to be worth $61,500, which value was based upon a capitalization of the average net income. It was further assumed the road was worthless, or nearly so, because the stockholders were willing to accept $20,000 for their stock. This was a proceeding to take the property of the corporation, not its stock. There is no rule of law which authorizes one corporation to take the property of another corporation without making compensation therefor, because the stock of the latter has no market value, or the property itself is unproductive. The road of this turnpike company was a visible, tangible thing. It was property which necessarily cost said company a large amount of money. It was worth to them just what a jury would give them in this proceeding, in the absence of any false testimony or improper conduct to influence the award. It was worth to the city the amount it would have cost the latter to have graded and macadamized the road as it was when taken. I say this without indicating what was the true measure of damages. That question is not raised by this record. The worth of the road to the city might not have been the proper rule for the jury in making their award. If, however, it was meritorious for the city to attempt to get the road for nothing, or at most for a nominal amount, notwithstanding the fact it had cost the company a large sum of money, it cannot be said to have been unconscionable for the latter to seek to get the cost or value of the road-bed in place.

We have looked at this case in the light of the record only, and have endeavored to dispose of it upon purely legal principles. The opinion of the learned court below and the testimony taken at the hearing are no part of the record, and do not come here upon a certiorari: Mauch Chunk v. Nescopeck, 9 Harris 46; Bradford v. Goshen, 7 P. F. Smith 495; Derry v. Brown, 1 Harris 389; Directors of Westmoreland v. Overseers of Conemaugh, 10 Casey 231; Plunkett's Creek v. Fairfield, 8 P. F. Smith 209; Oakland Railway Company v. Keenan, 6 Id. 198. As we have no power to review the testimony, and strictly no right even to

[In re Kensington, &c., Turnpike Co.]

look at it, any comment thereon would be improper. We decide cases as they are presented, and parties must stand or fall by the record. Were we to depart from this principle, the law would cease to be " a rule of action," and its judgments would become the mere reflex of the caprice of the judges who pronounce them.

The proceedings in the Quarter Sessions up to and including the confirmation of the report of the appraisers and the return of the mandamus execution are affirmed, and all of the proceedings commencing with the petition filed February 2d 1878, including the subsequent orders and decrees, are reversed and set aside, at the costs of the city of Philadelphia

TRUNKEY, J., filed a dissenting opinion, in which SHARSWOOD, C. J., and STERRETT, J., concurred.